UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_Wayne Best_

_(In the space above enter the full name(s) of the plaintiff(s).)_

-against-

_Ultimate Services, Inc._
_Jay Baranker-Director of Human Resources_
_Jeff Martin-Director of Operations and Julio Pagan_
_(In the space above enter the full name(s) of the defendant(s). Concierge Supervisor_
_If you cannot fit the names of all of the defendants in the space_
_provided, please write "see attached" in the space above and_
_attach an additional sheet of paper with the full list of names._
_Typically, the company or organization named in your charge_
_to the Equal Employment Opportunity Commission should be_
_named as a defendant.  Addresses should not be included here.)_

# 13 CIV 4840

**COMPLAINT
FOR EMPLOYMENT
DISCRIMINATION**

Jury Trial:  ☑ Yes   ☐ No
_(check one)_

This action is brought for discrimination in employment pursuant to: _(check only those that apply)_

☑ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).
**NOTE:** _In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity Commission._

☐ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 - 634.
**NOTE:** _In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission._

☑ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 - 12117.
**NOTE:** _In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity Commission._

☑ New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297  (age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic chacteristics, marital status).

☑ New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 131 (actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status).

_Rev. 05/2010_                                          1

**I.    Parties in this complaint:**

A.    List your name, address and telephone number.  Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff    Name    _Wayne Best_

Street Address    _249 East 7th Street 2nd Floor_

County, City    _Kings, Brooklyn_

State & Zip Code    _New York. 11218_

Telephone Number    _718 856-3727_

B.    List all defendants' names and the address where each defendant may be served.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  Attach additional sheets of paper as necessary.

Defendant    Name    _Ultimate Services Inc, Jay Baranker-Director of Human Resources, Jeff Martin-Operations Manager_

Street Address    _51 Progress Street_

County, City    _Union County Union City_

State & Zip Code    _New Jersey 07083_

Telephone Number    _(866) 699-9058 and (800) 858-8782_

_Also-Julio Pagan - 37 West 21st Street, New York, NY_

C.    The address at which I sought employment or was employed by the defendant(s) is:

Employer    _Ultimate Services Inc /Strike Force Protective Services_

Street Address    _247 West 35th St Suite 202_

County, City    _New York, NY 10001_

State & Zip Code    _New York 10001_

Telephone Number    _(866) 699-9058 and 800-858-8782_

_Place of Employment- Echelon Chelsea 37 West 21st Street NY NY 10010_

**II.    Statement of Claim:**

State as briefly as possible the <u>facts</u> of your case, including relevant dates and events.  Describe how you were discriminated against.  If you are pursuing claims under other federal or state statutes, you should include facts to support those claims.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  Attach additional sheets of paper as necessary.

A. The discriminatory conduct of which I complain in this action includes: *(check only those that apply)*

_____    Failure to hire me.

___✓___    Termination of my employment.

_____    Failure to promote me.

___✓___    Failure to accommodate my disability.

___✓___    Unequal terms and conditions of my employment.

*Rev. 05/2010*

Retaliation.

Other acts *(specify):* __Hostile Environment, Disparate Treatment__

**Note:** *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.*

B. It is my best recollection that the alleged discriminatory acts occurred on: __First Discriminatory__ *Date(s)*

Act began on June 7, 2011 and were continuous with many dates between June 7, 2011 and the date that

C. I believe that defendant(s) *(check one):* Plaintiff received his letter

_____ is still committing these acts against me. Or termination on

_____ is not still committing these acts against me. December , 2011

' Please see the Attached

D. Defendant(s) discriminated against me based on my *(check only those that apply and explain):* facts

[✓] race __African-American__   [✓] color __Black__   document for each date that is listed

[ ] gender/sex _____   [ ] religion_____

[ ] national origin _____

[ ] age.  My date of birth is _____ *(Give your date of birth only if you are asserting a claim of age discrimination.)*

[✓] disability or perceived disability, __see below__ *(specify)*

E. The facts of my case are as follow *(attach additional sheets as necessary):*

→ I have attached a "facts document to this "form" Please refer to this document for facts as well as this form. Also note with respect to disability discrimination listed above, the employer was motivated by my disclosure of disability and had already shown racial animus towards me during the course of my employment. With a cloud of "termination pending" over my head every day of employment. When I disclosed on Dec. 26, 2011, that the reason I was absent for two days without calling in was due

**Note:** *As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, the New York State Division of Human Rights or the New York City Commission on Human Rights.*

( Note Employer reason for termination was a pretext and Fraud. Employer kept Plaintiff daily concerned about "pending termination"

### III.  Exhaustion of Federal Administrative Remedies: Termination in violation of Title VII &

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or Ada etc. my Equal Employment Opportunity counselor regarding defendant's alleged discriminatory conduct on: __August 6, 2012__ *(Date).*

to my having relapsed, and that I had a history of prior Alcholism in which I had been treated previously, and wanted to speak with an EAP counselor regarding my level of stress 3 and what had triggered the relapse, The Employer stated he would get back to me. On 12/26/11, I told employer that I was ready, willing and able to return to work immediately and would agree to random urinalysis as well as attend an outpatient program on Plaintiff own time. Employer still terminated Plaintiff

B.   The Equal Employment Opportunity Commission *(check one)*:

_____   has not issued a Notice of Right to Sue letter.

___✓___   issued a Notice of Right to Sue letter, which I received on 4/16/2013 *(Date)*.

**Note:** *Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.*

C.   Only litigants alleging age discrimination must answer this Question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct *(check one)*:

_____   60 days or more have elapsed.

_____   less than 60 days have elapsed.

## IV.   Relief:

**WHEREFORE**, plaintiff prays that the Court grant such relief as may be appropriate, including injunctive orders, damages, and costs, as follows: Damages For Pain + Suffering, Loss of future employment earnings Compensatory and Punitive Damages Damages for intentional infliction of emotional distress - 1 Million Dollars in Damages

*(Describe relief sought, including amount of damages, if any, and the basis for such relief.)*

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this 11th day of July, 2013

Signature of Plaintiff     Wayne Best

Address                    Wayne Best
                           249 East 7th Street
                           Brooklyn, NY 11218
                           2nd Floor

Telephone Number           (718) 856-3727

Fax Number *(if you have one)*   (718) 856-3727

*Rev. 05/2010*                    4

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Wayne Best<br>249 East 7th Street, Apt 2<br>Brooklyn, NY 11218 | From: | New York District Office<br>33 Whitehall Street, 5th Floor<br>New York, NY 10004 |
|---|---|---|---|

| ☐ | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No.<br>**520-2012-03179** | EEOC Representative<br>**John B. Douglass,**<br>**Investigator** | Telephone No.<br>**(212) 336-3765** |
|---|---|---|

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

| X | More than 180 days have passed since the filing of this charge. |
|---|---|
| ☐ | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| X | The EEOC is terminating its processing of this charge. |
| ☐ | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

| ☐ | The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost. |
|---|---|
| ☐ | The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Kevin J. Berry,
**District Director**

4-12-2013
*(Date Mailed)*

Enclosures(s)

cc: **ULTIMATE SERVICES, INC.**
Jay Baranker, Director of Human Resources
51 Progress Street
Union, NJ 07083

CUSTOMER'S RECEIPT

UNITED STATES
POSTAL SERVICE ®

SEE BACK OF THIS RECEIPT FOR IMPORTANT CLAIM INFORMATION
NOT NEGOTIABLE

KEEP THIS RECEIPT FOR YOUR RECORDS

Pay to: Clerk of the Court S.D.N.Y
Address: U.SDC SDNY Daniel Patrick Moynihan USC
500 Pearl Street, NY, NY 10007-1312

| Serial Number | Year, Month, Day | Post Office | Amount | Clerk |
| 21206761536 | 2013-07-10 | 100011 | $50.00 | 0072 |

UNITED STATES
POSTAL SERVICE

**POSTAL MONEY ORDER**

Serial Number: 21206761536

Year, Month, Day: 2013-07-10    Post Office: 100011

U.S. Dollars and Cents: **$50.00**

Amount: FIFTY DOLLARS & 00¢ ********************

Pay to: Clerk of the Court S.D.N.Y
Address: USDC/SDNY - 500 Pearl St
NY, NY 10007-1312

Wayne Best - Pro-Se Plaintiff
From: 249 E 7th St 2nd Floor    0072
Brooklyn, NY 11218

Memo: Filing Fee Complaint Wayne Best Plaintiff vs. USI

SEE REVERSE WARNING · NEGOTIABLE ONLY IN THE U.S. AND POSSESSIONS

⑆000000800 2⑈    2 1206761536⑈

---

WESTERN UNION | MONEY ORDER

WESTERN UNION FINANCIAL SERVICES INC. - ISSUER
Englewood, Colorado

Payable at Wells Fargo Bank, Grand Junction, Quartown, N.A. Grand Junction, Colorado

**14-722957626**

A 112012 B 070913
T 3040 07
147229576268 L 000015

**$ 350.00**

PAY EXACTLY   THREE HUNDRED FIFTY DOLLARS AND NO CENTS

PAY TO THE ORDER OF: Clerk of the Court S.D.N.Y

Wayne Best 249 East 7th Blvd -2nd Floor
Brooklyn NY 11218-3727

Filing Fee For Complaint
Plaintiff Wayne Best vs USI
PAYMENT FOR/ACCT. #

Wayne Best

⑆102100400⑈ 40147722957626⑈

---

MONEY ORDER RECEIPT - NON NEGOTIABLE

LOAD THIS DIRECTION, THIS SIDE UP

Try the new Western Union Payments service for all your bills and get guaranteed proof of payment. To learn more and to search over 10,000 billers, goto WesternUnionPaysMyBills.com.

AGT 112012 LOC 000015 DT 070913 $350.00 3HUNDRED50DOLLARS AND NO CENTS

Clerk of the Court
S.D.N.Y

**★ 147229576268 ★**

LOAD THIS DIRECTION, THIS SIDE UP

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

New York District Office
33 Whitehall Street, 5th Fl
New York, N.Y. 10004

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE  $300

1121682E653  COS2

Wayne Best
249 East 7th Street, Apt 2
Brooklyn, NY 11218

UNITED STATES POSTAGE
PITNEY BOWES

02 1R
00)2007485          $ 00.46⁰
                    APR 12  2013
MAILED FROM ZIP CODE 10004

Wayne Best 249 East 7th Street -2nd Floor Btooklyn New york 11218 Phone/Fax (718) 856-3727 –
This is the Attachment to the Complaint Form Re: Wayne Best vs. Ultimate Services, In, et. al,

Wayne Best (Plaintiff), 49 year old, black male of African American descent, was 47 years old

when hired as a Concierge by Ultimate Services Inc. (Defendant) and was employed by

Defendant from 5/28/2011 to 12/28/2011. Plaintiff was qualified for the position with over 10

years of prior Concierge experience and a bachelor degree in Psychology. Plaintiff was hired as a

full time employee working 32 – 40 hours per week. Plaintiff worked the midnight shift (1st

shift), 12:00 am – 8:00 am, starting on Thursday (Wednesday night) and ending on Monday

(Sunday night). Plaintiff's pay was $14.00 per hour. Plaintiff was the only black male employed

at the Echelon Chelsea Residential Building. Georg Freese, a Caucasian male, worked full time

as a Concierge and Julio Pagan, a Latino male, worked full time as a Concierge and was also

given the title Supervisor. The part time staff was Matthew Thuman, Caucasian male, Ian

Alterman, Caucasian male and Lee Damons, non –black male.

Plaintiff knew and performed his job functions extremely well. Plaintiff's job functions were to

receive packages and dry cleaning, announce guests, respond to emergencies, input service

requests and complaints in the computer and make calls to 311 or 911 regarding noise and/or

other unlawful acts.

1

Wayne Best 249 East 7th Street -2nd Floor Btooklyn New york 11218 Phone/Fax (718) 856-3727 –
This is the Attachment to the Complaint Form Re: Wayne Best vs. Ultimate Services, In, et. al,

Plaintiff was an outstanding employee and received a score of 76 out of a possible 81 on his evaluation. Plaintiff had never called in late, called out sick or missed a day prior to December 23, 2011and Plaintiff had never been disciplined or received any written warning for anything.

## RACE DISCRIMINATION

Plaintiff contends that during the course of Plaintiff's employment at USI, Plaintiff was subjected to the continuous "threat of termination", a hostile environment, disparate treatment, discrimination due to race, retaliatory action, unequal terms and conditions of Plaintiffs employment , and adverse actions that occurred DURING THE COURSE of Plaintiff's employment , and adverse employment actions occurring under circumstances that gave rise to an inference of unlawful discrimination; and Plaintiff therefore had the terms and conditions of his employment violated and was DISCRIMINATED ON THE BASIS OF RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964.

1) Plaintiff states that he knew at the beginning of his hire, that he was being treated differently than his Caucasian co- workers, since on or around June 8, 2011, when Plaintiff co – workers were asked to give urine samples and he was not. When Plaintiff asked Operations Manager, Jeff Martin, why he was not asked to give his urine sample like the other employees, Jeff

Wayne Best 249 East 7th Street -2nd Floor Btooklyn New york 11218 Phone/Fax (718) 856-3727 –
This is the Attachment to the Complaint Form Re: Wayne Best vs. Ultimate Services, In, et. al,

2) Martin, said don't worry about it and when I asked why, Jeff, offered no other explanation.

Plaintiff then asked Concierge Supervisor Julio Pagan the same question, Julio stated that

when he was asked to give his urine, he told Jeff Martin that he can't pass a drug test and that

Jeff might as well fire him right now, because he smokes marijuana everyday. Julio also

stated that Jeff was going to give him an extra month or more to take it. When Plaintiff was

finally asked to give his urine, it was a month later in July, and Julio Pagan gave his a week

or two after that. This type of disparate treatment indicated to Plaintiff, that the Defendant

wanted to disguise their favorable treatment for Julio, by not making it so obvious, while

having Plaintiff wait a month and give his urine around the same time as Julio, in order to

give Julio time to clean or dilute his system, so that he may be able to pass the drug test. No

similarly situated Caucasian employee had to experience this type of Disparate Treatment.

Note: this same Julio was also allowed to come in late once or twice a week for months,

without receiving a warning a drug test or face termination.


3)  Plaintiff states that the climate of intimidation and threats to Plaintiff's employment began to

hover over Plaintiff as a cloud: as early as August 11, 2011, and was circulated in Emails in

3

which a similarly situated Caucasian employee (Georg Freese) communicated with the

Concierge Supervisor (Julio Pagan) about changing the work schedule of Plaintiff or force

by another employee (Lee Damons) that forced him to resign: Defendant in an effort to cover-up

their animus towards Plaintiff, and to prevent Plaintiff from using said E-mail as evidence and

proof of intent to threaten and harass Plaintiff; then proceeded to cover-up and conceal the matter

by altering and doctoring the E-mail and removing it from the regular inbox. After Lee resigned,

Plaintiff was given the doctored E-mail that was in the archives, by part time employee, Matthew

Thuman. Matthew a Caucasian employee, whose name was also mentioned in the email, was

spoken to by management and received an apology from the Operations Manager, Jeff Martin,

and Julio Pagan. Plaintiff on the other hand was never addressed by Defendants about the Email

and did not receive an apology from anyone. Defendants acted as if Plaintiff was not worthy to

be apologized to; Plaintiff thought he was to just shut up and do his job or he might actually be

“…right out of this building”. Defendants demonstrated no remorse or sensitivity to Plaintiffs as

an equal employee as they did Matthew. No other similarly situated Caucasian employee had the

Terms and Conditions of their employment affected (changing of schedule) being discussed by

management and another similarly situated employee, while also working with the threat of

being fired if he does not agree to the changes.

4) On October 17, 2011 an E-mail was forwarded to all the Concierges in reference to a new

   updated policy and procedure regarding the resident's and their complaint's when they smell

   an illegal substance. All Concierges were asked if they had any questions or concerns at the

Wayne Best 249 East 7th Street -2nd Floor Btooklyn New york 11218 Phone/Fax (718) 856-3727 –
This is the Attachment to the Complaint Form Re: Wayne Best vs. Ultimate Services, In, et. al,

end of the email. When Plaintiff replied to all (which included Julio Pagan the Supervisor

and George Laitsas, Roseland Property Manager – who had explained the policy in the email

and all Concierge's) to ask several questions and state his concerns about the many gray

areas and safety issues regarding the policy, Plaintiff was retaliated against by Defendants,

ignored and harassed. Plaintiff was told to resign by the Director of Human Resources, Jay

Baranker; Plaintiff was also asked if he had an attorney to write the E-mail by Operations

Manager, Jeff Martin – who also stated to the Plaintiff that George Laitsas, Roseland

Property Manager was offended and concerned that Plaintiff might have a legal problem.

Plaintiff then began to get ignored, in that his Emails pertaining to said policy and Terms and

Conditions of Plaintiff employment were not responded to in writing or addressed

sufficiently verbally, but promised to be clear and concise in writing by Jeff Martin. Plaintiff

realized that the Defendant was disingenuous when asked if they had any questions. Plaintiff

knew that George Laitsas, the Roseland Property Manager wrote the policy to intimidate the

Concierges, to get Plaintiff to follow the policy without using his brain to question the policy

even though the policy was never signed off by the Defendants. Plaintiff was treated

differently than other similarly situated non-black employees when they noted anything

pertaining to the policy or asked any questions on what to do in other emails; these

employees were not asked to resign nor were they ignored.


5) Plaintiff was singled out, intimidated and threaten with his job security, when another email

was left in the computer on October 26, 2011; for all to read from Human Resources, Melissa

Edwards to Julio Pagan, Supervisor, highlighting specific points in a meeting that they had.

One of the points singled Plaintiff out stating that, "The issue with Mr. Best will be resolved

by Friday" This email came a week after Plaintiff was asked to resign and also had all of

Plaintiffs co-workers telling Plaintiff that he is about to get fired any day now. Plaintiff was

walking on egg shells and confused as to why he was singled out. No other non-black employees

was singled out or intimidated by the Defendants, or had their employment fate doomed in

writing, or received this type of Disparate Treatment, had the Terms and Conditions of their

employment violated for writing an E-mail that questioned George Laitsas policy.

6) Plaintiff was denied his employee handbook for almost 5 months. Plaintiff requested his

handbook from or on around June 7, 2011 until October 27, 2011. Plaintiff received his

handbook on October 27, 2011. On October 31, 2001, Plaintiff was told by his Supervisor,

Julio Pagan, that if he did not sign the acknowledgement for the employee handbook after

receiving it on the 27th of October (although there was never an orientation given by Human

Resources concerning the handbook), that Plaintiff would be written up and terminated –

since the handbook stipulates that it must be signed to continue employment. Plaintiff was

being harassed by the Supervisor to sign the handbook from the first day he received it, on

Wayne Best 249 East 7th Street -2nd Floor Btooklyn New york 11218 Phone/Fax (718) 856-3727 –
This is the Attachment to the Complaint Form Re: Wayne Best vs. Ultimate Services, In, et. al,

the 27<sup>th,</sup> and the 28th of October. Plaintiff was the only employee harassed to sign the handbook.

Georg Freese a similarly situated Caucasian employee, told me in late December that he did not sign the handbook and was never asked to sign it. Georg Freese was never aware that he had a handbook, until Plaintiff brought it to his attention. Matthew another Caucasian employee stated to Plaintiff that he's not signing it at all and he was not harassed to sign it. No other non-black employees were given this ultimatum, received this Disparate Treatment, and had the Terms and Conditions of their employment violated because they did not sign it immediately. Note: all emails that Plaintiff sent to Human Resources Director Jay Baranker, Melissa Edwards and Operations Manager, Jeff Martin, concerning these issues were never responded to and in violation of their own policy.

7) On November 3, 2011, Plaintiff E-mailed Jeff Martin, Operations Manager, with respect to securing a copy of his performance appraisal.

8) In discussing his performance with respect to the E-mail, Plaintiff expressed his concern about how the performance appraisal was graded by the Supervisor Julio Pagan.

9) In that performance appraisal dated October 12, 2011 Plaintiff was advised by his Supervisor Julio Pagan, that he did not believe in giving out any "10's", and advised all employees that

7

Wayne Best 249 East 7th Street -2nd Floor Btooklyn New york 11218 Phone/Fax (718) 856-3727 –
This is the Attachment to the Complaint Form Re: Wayne Best vs. Ultimate Services, In, et. al,

the highest rating on each general factor is a "9". However Plaintiff was told by Julio Pagan, that he was worthy of "10's".

10) Mr. Pagan advised Plaintiff that only "9" of the general factors listed in the performance appraisals was evaluated for a given employee.

11) Mr. Pagan advised Plaintiff that the general factor question #8 – Adherence to Policy was not evaluated for any employee on 10/12/2011.

12) At the time of the performance appraisal, Plaintiff had not received an Employee Handbook.

13) In fact, in- spite of numerous requests beginning in June 2011- October 27, 2011, Plaintiff was denied an employee handbook.

14) Plaintiff was provided with an Employee handbook on October 27, 2011, after the date of October 12, 2011, when the employee appraisal performance was conducted.

15) In fact it was only on October 6, 2011, when Wayne Best received the Concierge Policy for employees working with Roseland Properties, which was 6, days prior to the performance appraisals conducted on October 12, 2011.

16) With any performance rating labeled between 10-9 (outstanding) and 8-7 (Listed as (very good), Plaintiff was given four "9's" and five "8's".

17) With the highest score of any employee evaluated and rated under Julio Pagan, being an "81", and with Plaintiff receiving a total score of "76", Plaintiff contends that he received an exemplary evaluation, with 76, being the highest score received by any employee evaluated.

18) Plaintiff contends where the "9's" were listed Julio Pagan told Plaintiff that Plaintiff actually

deserved '10's", and where the "8's" were listed, Plaintiff was told that he actually deserved

"9's", by Julio Pagan.

19) However it is Plaintiff's allegation that in the grading of performance appraisal, Plaintiff was

under evaluated by Julio Pagan, and subjected to the downgrading of his scores to make his

performance appraisal of 10/12/2011. In closer alignment with non-black employees, so that

plaintiff true performance appraisal would not be listed, so that Plaintiff, in spite of how

exemplary his performance evaluation should have been based upon his work; Plaintiff was

subjected to being left – back or downgraded in his performance appraisal to cover – up the

failures or inadequacy of non – black employees.

20) Plaintiff, the sole black employee at the Echelon Chelsea employment site was denied the

exemplary performance appraisal he deserved, in order to appease the non – black employees

and not allow Plaintiff performance appraisal to be "much" higher,( even though, Julio Pagan

told Wayne Best he deserved a higher rating).

Wayne Best 249 East 7th Street -2nd Floor Btooklyn New york 11218 Phone/Fax (718) 856-3727 –
This is the Attachment to the Complaint Form Re: Wayne Best vs. Ultimate Services, In, et. al,

21) Plaintiff alleges that Mr. Pagan used the evaluation tool (performance appraisal) to

discriminate against Plaintiff and deny him the equal terms and Conditions of his

employment.

22) Plaintiff alleges that this is exactly how he was treated with respect to being held back from

taking a urinalysis during the time of his employment, just simply to appease a non – black

who started employment at USI, during the same time as Plaintiff.

23) Instead of allowing the Plaintiff to take the urinalysis immediately after he began

employment with USI, Plaintiff was cause to wait until July 14, 2011, in order to take his

urinalysis, in order to cover up the fact that a non – black employee Julio Pagan admitted to

daily illegal drug use, and advised Jeff Martin, Operations Manager, that he would "fail" the

urinalysis, if he had to take it immediately after the start of employment.

24) So the Plaintiff was "held" back and subjected to unequal terms and Conditions of his

employment and was not given a urinalysis until July 14, 2011, in order to cover – up failings

of a non – black employee Julio Pagan, who need additional time in order to make his urine

clean from illegal drugs.

25) When Julio Pagan told Mr. Martin that he would be drug free by mid July 2011, Plaintiff was

then provided he was then provided to take a drug urinalysis, for July 14, 2011.

Wayne Best 249 East 7th Street -2nd Floor Btooklyn New york 11218 Phone/Fax (718) 856-3727 –
This is the Attachment to the Complaint Form Re: Wayne Best vs. Ultimate Services, In, et. al,

26) Plaintiff was denied the right to be scheduled for a drug urinalysis immediately after the start of his employment, because Jeff Martin did not want to bring attention to the fact that a non – black employee who started during this same period as Plaintiff..

27) Plaintiff states that Julio Pagan could not pass a urinalysis, so Plaintiff was forced to wait until the non – black employee was able to pass a urinalysis.

28) Plaintiff alleged that this is discrimination and that as the sole black employee at the Echelon Chelsea site for USI, Plaintiff alleges that he was treated less than and secondary ti the concern/needs of non – black employees.

29) Plaintiff alleges that USI placed his personal safety in jeopardy – with respect to ordering Plaintiff to call "311"complaints against "clubs" within the immediate vicinity of his employment; even if there was no noise complaint at all.

30) Plaintiff alleges that defendant kept telling Plaintiff that because of his "presence" he was given the most difficult scheduling (nights in which fights and shootings took place at the clubs)

31) Plaintiff alleges that his name was placed on all 311 complaints that he called in.

32) Plaintiff alleges that in scheduling he was given the most difficult days, as oppose to non – black employees, Plaintiff was told it was due to his "presence"

33) Plaintiff alleges that his "presence" was used to deny his assignment scheduling on nights which there were less problems at clubs.

Wayne Best 249 East 7th Street -2nd Floor Btooklyn New york 11218 Phone/Fax (718) 856-3727 –
This is the Attachment to the Complaint Form Re: Wayne Best vs. Ultimate Services, In, et. al,

34) Plaintiff states when he requested a change in his scheduling of assignment for certain nights when the problems were less at the clubs or no noise, he was denied.

35) In fact, Plaintiff alleges that management advised him that presence was needed on the most difficult days – Thursday, Friday and Saturday.

36) Plaintiff alleges that he was denied those favorable nights, even though those favorable nights were available for scheduling.

37) Plaintiff alleges that Defendants hired a non – black temp, rather than give Plaintiff the favorable hours that were available for scheduling.

38) Plaintiff alleges that the safety conditions were so bad outside his place of employment, that on or about December 9, 201, at 4:00am, there was a shooting, that caused the Plaintiff a great deal of emotional distress.

39) Plaintiff alleges that he was subjected to ongoing racial discrimination, that subjected him to disparate treatment, an hostile environment, adverse employment actions occurring under circumstances that gave rise to an inference of discrimination; and unequal terms and conditions of his employment.

40) Plaintiff alleges that the incidents listed were performed by Supervisory management and the Employer is liable under the theory of Respondent Superior.

41) Plaintiff alleges that the incidents listed in this complaint prove that the actions of the Defendant were intentional and done with the knowledge that Defendants actions were discriminatory and in violation of TITLE VII.

12

42) Wayne Best, Plaintiff states that Defendants actions subjected him to being ignored, not having phone calls retuned, or management scheduling meeting with Plaintiff and failing to show up, when he wrote memos affecting the Terms and Conditions and requesting clarification of his employment.

43) Plaintiff alleges that the racial discrimination was so insidious towards him that Plaintiff was deemed (an aggressive man)at the mere writing of memos seeking clarification on policy issues that affected the Terms and Conditions of employment.

44) Plaintiff alleges that Defendants placed the value of his safety at risk and gave non –blacks the more favorable scheduling assignments.

45) Plaintiff alleges that Defendants also caused Plaintiff to feel trapped in his scheduling assignment of the most difficult days, and in the wake of December 9, 2011, shooting outside of the Echelon Chelsea apartment, Plaintiff grew increasingly concerned why even if other nights opened up he was told that management required his "presence" on the difficult nights and those days would not be rescheduled.

46) On November 3, 2011, Plaintiff was told by his Supervisor Julio Pagan, that Jay Baranker Human Resources Director and Jeff Martin, Operations Manager, called Plaintiff an aggressive man (a coded racial term coined for an assertive black employee, meaning this black man is out of his place) for questioning the updated complaint policy, that it would be cost effective to get rid of Plaintiff, and that they wanted Plaintiff fired. Julio also stated that

Wayne Best 249 East 7th Street -2nd Floor Btooklyn New york 11218 Phone/Fax (718) 856-3727 –
This is the Attachment to the Complaint Form Re: Wayne Best vs. Ultimate Services, In, et. al,

he is the only one standing between the two of them from firing Plaintiff. Julio became very

confrontational and emotional as to why Plaintiff questioned the E-mail and replied to all,

especially since George Laitsas was included in the email. Plaintiff questioned USI

management in an E-mail, to inquire if what Julio said was true or not and if not why is Julio

allowed to harass Plaintiff and allowing Plaintiff to be subjected to a hostile environment.

Plaintiff also questioned in the E-mail was he being set up to be fired. Plaintiff's E-mail was

never answered, just ignored. No other non-black employee was called this derogatory term by

Defendant, or threatened to be terminated, treated Disparately, had the Terms and Conditions of

their employment violated for questioning a policy in an email.

47) On November 10, 2011, Plaintiff was scheduled to meet with Defendant, early in the

morning around 7:00 am before Plaintiff gets off work. Plaintiff gets off at 8:00 am.

Operations Manager, Jeff Martin, did not show up or even call to state that they were not

coming at all. Plaintiff asked the Supervisor, Julio Pagan, around 8:05 am to call Jeff Martin

and ask him what happened with the meeting. According to the Supervisor, Jeff was sleep

and said he couldn't make it. Jeff did not want to talk with Plaintiff and Julio hung up.

Plaintiff felt that Management was disingenuous about meeting with him. Plaintiff contended

Wayne Best 249 East 7th Street -2nd Floor Btooklyn New york 11218 Phone/Fax (718) 856-3727 –
This is the Attachment to the Complaint Form Re: Wayne Best vs. Ultimate Services, In, et. al,

in an E-mail that the Defendant could simply answer the E-mail and put whatever they want to say in writing since Plaintiff questions were never answered, but the Defendant did not want to put anything in writing, afraid that they can be held accountable for anything in writing. So meeting with Plaintiff or talking on a phone with him, Defendants can easily lie and say they did not say something, because there would be no proof or evidence. If you

remember, Defendant had doctored an E-mail in August 2011, and put it in the archives – so that they could conceal the lie and do away with the evidence and act as if nothing happened. This is why the Defendants are not to be trusted. If they would doctor an E-mail what other lengths would they go to, to hide their discrimination practices. Plaintiff, received Disparate Treatment and was purposefully ignored and not responded to.

48) On December 18, 2011, Plaintiff E-mailed Director of Human Resources, Jay Baranker, and Operations Manager, Jeff Martin, restating that his concerns with respect to the update smell of illegal substance complaint policy, harassment, intimidation, retaliation, a hostile environment, threat of termination, were not being responded to and how frustrated Plaintiff was because he was working very hard, being professional with all co-workers and residents, but still Plaintiff is being ignored, constantly asked by other co-workers and some residents

when will Plaintiff get fired. Plaintiff was still being treated less than other non-black employers.

### American with Disability Act Discrimination

1) Plaintiff knew and performed his job functions extremely well.

2) Plaintiff's job functions were to receive packages and dry cleaning, announce guests, respond to emergencies, input service requests and complaints in the computer and make calls to 311 or 911 regarding noise and/or other unlawful acts.

3) Plaintiff was an outstanding employee and received a score of 76 out of a possible 81 on his evaluation.

4) Plaintiff had never called in late, called out sick or missed a day prior to December 24, 2011.

5) Plaintiff had never been disciplined or received any written warning for anything.

6) Plaintiff was qualified to do his job, with or without reasonable accommodations.

7) On December 26, 2011, Plaintiff calls Operations Manager, Jeff Martin, and explains to him why he was absent on December 25th, and December 26, 2011.

8) Plaintiff advises Jeff that he made a mistake and relapsed on alcohol, that he was a recovered alcoholic and that he had blacked out.

16

Wayne Best 249 East 7th Street -2nd Floor Btooklyn New york 11218 Phone/Fax (718) 856-3727 –
This is the Attachment to the Complaint Form Re: Wayne Best vs. Ultimate Services, In, et. al,

9) Plaintiff advises to Jeff Martin that he has a documented medical history of alcoholism.

10) Plaintiff requests a reasonable accommodation from Jeff Martin, Pursuant with the American with Disability Act 1990.

11) Plaintiff advises Jeff, that he would like to speak to an EAP Counselor, which is pursuant to the employee handbook's Substance Abuse Policy.

12) Plaintiff states to Jeff Martin, that he is willing to do whatever it takes to keep his job.

13) Plaintiff advises to Jeff Martin, that he's willing to go to outpatient counseling during the daytime on his own time, take random urine samples, and speak with an EAP Counselor.

14) Jeff Martin advises Plaintiff that he would get back to Plaintiff concerning these issues.

15) On December 28, 2011, Jeff Martin calls Plaintiff and tells him that he has been terminated.

16) Plaintiff advises to Jeff Martin, that he is sober, ready, willing and able to work his night shift for that night.

17) Plaintiff asks Jeff Martin whatever happened with respect to the EAP Counselor and reasonable accommodations (outpatient counseling).

18) Plaintiff advises Jeff Martin that USI is in violation of the American with Disability Act of 1990 and in violation of their own employee handbook.

19) Plaintiff asks Jeff Martin, why was he terminated.

20) Jeff Martin states to Plaintiff that he was in violation of page 7.

Wayne Best 249 East 7th Street -2nd Floor Btooklyn New york 11218 Phone/Fax (718) 856-3727 –
This is the Attachment to the Complaint Form Re: Wayne Best vs. Ultimate Services, In, et. al,

21) Plaintiff asks Jeff Martin to be specific.

22) Jeff Martin becomes silent and does not answer.

23) Plaintiff states to Jeff Martin, that he never received a warning or any disciplinary actions pertaining to attendance.

24) Plaintiff asks for a letter of termination, since Jeff had not explained nor was he specific as to what or why Plaintiff was terminated for.

25) Plaintiff makes several requests to USI for a letter of termination the following week of January 2, 2011.

26) Plaintiffs calls USI Human Resource Director, Jay Baranker, on January 4, 2011 and states that he will report to work for January 5, 2011 if he does not receive a letter of termination.

27) Jay Baranker E-mails Plaintiff a letter of termination with no specific reason as to what or why he was terminated for.

28) Plaintiff applies for Unemployment Insurance Benefits on December 29, 2011.

29) On or around February 1, 2011, does Plaintiff finally finds out in writing from the Unemployment files as to why he was terminated.

Wayne Best 249 East 7th Street -2nd Floor Btooklyn New york 11218 Phone/Fax (718) 856-3727 –
This is the Attachment to the Complaint Form Re: Wayne Best vs. Ultimate Services, In, et. al,

30) Plaintiff finds out that USI went on record stating that Plaintiff was terminated for 3 no

calls, 3 no shows on consecutive days.

31) Plaintiff alleges that once Plaintiff disclosed that he had relapsed and that he was a

recovered alcoholic, Defendant's used Plaintiffs disability to discriminate against him,

violate the American with Disabilities Act, by failure to provide an effective reasonable

accommodation – and failure to allow Plaintiff to speak with an EAP Counselor pursuant

to the employers own personnel manual.

Please Note - **This is the 1ˢᵗ Draft of the Complaint that is being filed by the Plaintiff –**

**because he was advised by the Pro-Se office to file from 90 days from the date of the**

**Envelope as opposed to the date that the plaintiff received the actual Right to Sue letter**

**from the EEOC – which was in fact April 16, 2013. Nonetheless, the plaintiff was told that**

**he could amend this Complaint, and will do so, to include the addition relevant facts.**

**<u>Plaintiff Right to Sue Letter</u>**

**Plaintiff Right to Sue Letter and a copy of the Envelope stamped dated April 12, 2013 is**

**attached to this Complaint.**

Wayne Best 249 East 7th Street -2nd Floor Btooklyn New york 11218 Phone/Fax (718) 856-3727 –
This is the Attachment to the Complaint Form Re: Wayne Best vs. Ultimate Services, In, et. al,

**Plaintiff Claims Venue in Manhattan NY County at the USDC/SDNY**

**Plaintiff Claims Venue** based upon the fact that Plaintiff was hired in the New York City

Manhattan Office of Ultimate Services Incorporated and Plaintiff was also employed at an on

site location in  Manhattan New York City.

I Wayne Best –the Plaintiff, do hereby affirm under the penalty of perjury that the above stated

allegations in this fact document to be included and attached to the Complaint Form are true, and

those statements which I state upon information and belief I believe them to be true as well.

Dated: July 11, 2013

Wayne Best

249 East 7th Street – 2nd Floor Brooklyn, New York 11218  P/F (718) 856-3727